**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank Millard BENSON, Defendant-
Appellant.**

**No. 17965.**

United States Court of Appeals
Sixth Circuit.

Feb. 16, 1968.

G. Edward Friar, Knoxville, Tenn., for appellant.

John H. Cary, Asst. U. S. Atty., Knoxville, Tenn., J. H. Reddy, U. S. Atty., Knoxville, Tenn., on brief, for appellee.

Before WEICK, Chief Judge, and EDWARDS and CELEBREZZE, Circuit Judges.

WEICK, Chief Judge.

This is a direct appeal from a judgment of conviction entered upon a jury verdict of guilty of the crime of knowingly storing a stolen motor vehicle which had been moving as a part of interstate commerce, in violation of 18 U.S.C. § 2313. Benson was sentenced to eighteen months' imprisonment.

The indictment contained three counts. The first count charged Benson, Hollo-

way and Smith with concealing the stolen motor vehicle moving in interstate commerce; the second count charged them with receiving it; and the third count charged only Benson with storing it.

The case was tried three times. In the first trial the jury disagreed. The indictment was then dismissed as to Smith, as he had been convicted in the same court and sentenced to fifteen years' imprisonment on a counterfeiting charge. In the second trial Benson and Holloway were acquitted on counts one and two of the indictment, and Benson was convicted on count three, which charged him with storing the stolen motor vehicle. On appeal to this Court, the conviction was reversed because of prejudicial error in the cross-examination of a defense character witness. United States v. Benson, 369 F.2d 569 (6th Cir. 1966).

The present appeal is to review Benson's conviction for the storing offense, which conviction occurred upon remand at his third trial. Only errors of law are pointed out in Benson's brief. He does not question the sufficiency of the evidence to support his conviction.

In his instructions to the jury the District Judge, after relating Benson's theory of the case said:

"The Government says that that is a story that cannot stand up, that that story was cooked up by the defendant as a defense to this lawsuit and that it is not true."[1]

After the District Judge finished his charge, but before the case was submitted to the jury, the following colloquy took place:

"MR. FRIAR: * * * The other thing I want to ask the Court about from the charge is in referring to the defendant's theory of the case. Along toward the end of the charge, the Court said something to this effect, which I wrote down hurriedly, in reference to the defendant's theory of

what happened, the Court said something to the effect, quotes 'The Government says that that is a story that was cooked up for this case' unquote.

"I was wondering, if your Honor please, actually no witness and not Mr. Horde nor anyone connected with the Government have made that allegation that that was a story that was cooked up for this case.

"Of course, they contended some other theories but I was wondering, maybe, if the Court could clarify that some way.

"MR. HORDE: I used the expression 'made up' when I was talking on cross-examination.

"THE COURT: Maybe the word 'cooked' wasn't used. Of course, that is the only effect, if the Government, the only effect, but that is just inferences. It is a matter for the jury.

"MR. FRIAR: I was just thinking, if your Honor please, and I don't want to be discussing somatics [sic], but I was thinking the phrase 'cooked up' as a connotation from the Court adds weight to the—

"THE COURT: You want me to say made up?

"MR. FRIAR: That the Government contends that was not true or made up.

"THE COURT: All right. Remind me when the jury comes back and I will say—" (Rec. pp. 367–368)

The jury was recalled and the Court instructed the jury, to conform to defense counsel's request, as follows:

"THE COURT: Members of the jury, in explaining some of the circumstances relied upon by the Government to show guilt by circumstantial evidence, the Court, among other things, said that the defendant claimed that he advanced $50.00 to this man Badger and took the keys to the Ford automobile as security.

[1]. The Government had offered evidence that Benson bought the stolen automobile from Smith for $1,200., knowing that it had been stolen. Benson claimed that he had obtained the automobile from one, Badger, as security for a $50-loan.

"Now rather than using the words 'cooked up' the Court desires to modify that sentence by eliminating the words 'cooked up' and substitute therefor that the Government simply contends that the contention of the defendant that he advanced this $50.00 to this man Badger and took the car, the keys to the car as security, is not true." (Rec. p. 369)

Since the Judge did everything he was asked to do by defense counsel, we find no basis for the present complaint of error. Counsel took no objection to the Court's charge.

It is further contended that Benson was prejudiced by improper remarks made by Assistant United States Attorney Horde in his closing arguments to the jury.

In his first and second trials Benson was represented by a lawyer named Simpson, who later became an Assistant United States Attorney. In his direct examination Benson testified that he and his attorney (Simpson) flew to Nashville in an effort to locate Badger, from whom he claims to have obtained the motor vehicle as security for a $50-loan, but that they did not find Badger. On cross-examination he was asked whether he had fired his attorney, and his answer was "No". He stated his understanding was that Simpson and his present lawyer had worked together.

■ In his closing argument to the jury, the Assistant United States Attorney said:

"MR. HORDE (Assistant U. S. Attorney): * * *

"I'd like to have had Mr. Simpson here. Mr. Simpson is, unfortunately can't get here and I—I see he is here now. If I had known he could have told us. I would like to put him on the stand and testify right now but I can't do that, it is too late."

The comment stands in isolation and was not connected in any way with the remainder of the summation. The comment was improper as Benson's first attorney could not have been compelled to testify against his client. The Government did not call the attorney as a witness. Counsel for Benson did not object to the argument. Had he done so, the objection should have been sustained and a sharp reprimand from the Court would have been in order. Benson was represented by a capable lawyer of his own choosing, who had full opportunity to object if he thought that the substantial rights of his client were being adversely affected by the argument. We are not unmindful of the fact that lawyers hesitate to object to an argument because of a possible adverse effect on the jury. For this reason sua sponte action on the part of the Court is sometimes desirable. Neither a motion to strike nor a motion for mistrial was made.

■ It is clear that unless objection is made to improper remarks in an argument to the jury such remarks cannot serve as a basis for reversal of a judgment unless it is shown that they prejudiced the substantial rights of the defendant. See e.g., United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 237–240, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); United States v. Aadal, 368 F.2d 962, 965 (2d Cir.1966), cert. denied 386 U.S. 970, 87 S.Ct. 1161, 18 L.Ed.2d 130 (1967); Findley v. United States, 362 F.2d 921, 923 (10th Cir.1966); Van Nattan v. United States, 357 F.2d 161, 163 (10th Cir.1966); Forsberg v. United States, 351 F.2d 242, 249 (9th Cir.1965), cert. denied 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966); United States v. Donovan, 339 F.2d 404, 410–411 (7th Cir. 1964), cert. denied 380 U.S. 975, 85 S.Ct. 1338, 14 L.Ed.2d 271 (1965); United States v. Rayborn, 310 F.2d 339, 340 (6th Cir.1962), cert. denied 373 U. S. 952, 83 S.Ct. 1683, 10 L.Ed.2d 707 (1963); Isaacs v. United States, 301 F. 2d 706, 735–739 (8th Cir.) cert. denied 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962).

As Judge O'Sullivan said in United States v. Medlin, 353 F.2d 789, 795 (6th Cir.1965), cert. denied 384 U.S. 973, 86 S.Ct. 1860, 16 L.Ed.2d 683, rehearing de-

nied 385 U.S. 889, 87 S.Ct. 14, 17 L.Ed. 123 (1966):

> "No objection was made to the criticized argument. Unless we are of the view that it was so inflammatory and prejudicial as to be beyond correction by action of the trial judge, we should follow the law that failure to object to the accused argument forecloses its use as a ground for new trial."

In our opinion this is not a case for the application of the plain error rule, as we find no prejudice to Benson's substantial rights. Rule 52(b) Fed.R.Crim. P.

 Finally, Benson contends that the Court erred in not giving to the jury a special instruction to charge on the definition of "storing."[2]

The special request merely asked the Court to define the word "storing". It did not contain a definition of that word. The Court complied with the special request by instructing the jury as follows:

> "The words [sic] 'stored' as used in the statute means to place at a place for keeping, preservation or disposal. Another definition is to keep something for future use.
>
> "If you find that the defendant took possession of the automobile described in the indictment knowing that it was stolen and if the automobile was a part of interstate commerce although, as indicated, it was not necessary for the defendant to know that alleged fact before there can be a conviction, and drove it to his home and parked it there, this would be storage within the meaning of the Act."

No objection was made to the Court's charge.

There was evidence that after Benson took possession of the stolen motor vehicle he permitted it to remain in a parking area across the street from his office for about two weeks, and then he drove it to his home and parked it in his driveway for another two weeks before he was arrested.

In our opinion, the definition given by the trial court was adequate. Benson has not suggested any different definition, nor has he pointed out any respect in which the definition was inaccurate.

Other points are raised which we have considered, but they do not merit discussion.

Affirmed.

---

**2.** The requested special instruction was as follows:

> "In a previous trial of this matter, the Court instructed the Jury as follows:
>
> "'And then storing a motor vehicle doesn't require a definition either. If the automobile is taken, if it's placed at a definite location and kept at a definite location then within the meaning of this Statute then it is stored.'
>
> "The Defendant would respectfully request the Court to charge a definition of 'Storing' and would respectfully take the position that the above does not adequately cover the elements contained in the legal requirements for a definition of 'storing' as interpreted by the Courts."