422 F.2d 150
 70-1 USTC P 9248
 UNITED STATES of America, Plaintiff-Appellee,
v.
Louis C. MIRIANI, Defendant-Appellant.
 No. 19274.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1970.
 
 George S. Fitzgerald, Detroit, Mich., for appellant; Kent B. Willis, Detroit, Mich., Henry G. Singer, Brooklyn, N.Y., H. Elliot Wales, New York City, on brief.
 Richard B. Buhrman, Atty., Dept. of Justice, Washington, D.C., for appellee; Johnnie M. Walter, Asst. Atty. Gen., Joseph M. Howard, Atty., Dept. of Justice, Washington, D.C., on brief.
 Before WEICK, COMBS and BROOKS,[1] Circuit Judges.
 BROOKS, Circuit Judge.
 
 
 1
 The defendant-appellant, Louis C. Miriani, was convicted by a jury on all counts of a four-count indictment charging him with attempting to evade and defeat a large part ($163,723.49) of his federal income taxes due for the years 1959 through 1962, in violation of 26 U.S.C. 7201. A sentence of a year and a day imprisonment and a fine of $40,000 was imposed.
 
 
 2
 Six principal issues are raised on this appeal in seeking a reversal of the judgment but consideration of these issues and of the entire record establishes that the defendant received a fair trial and we affirm the judgment of conviction.
 
 
 3
 Defendant, a practicing lawyer for many years, was mayor of Detroit from 1956 through 1961. He was defeated in his bid for re-election in 1961 but was again elected to the City Council in 1965. Beginning in 1964 agents of the Internal Revenue Service held several conferences with defendant concerning the accuracy of his income tax returns, especialy for the years in which he was mayor. During the period of investigation, defendant furnished the agents with certain information and on the basis of this information and other evidence, the government determined defendant's net worth to be $181,000 at the close of the 1956 tax year and that it had increased to $605,000 by the end of 1962.
 
 
 4
 The government's case was centered around establishing the accuracy of its net worth determinations and that the significant increase in net worth was due to unreported, but taxable, 'political contributions' received by the defendant during the years in question. The defendant sought to demonstrate that any excess of net worth over reported income was due to cash on hand at the beginning point for establishing defendant's net worth, gifts received by him, and unspent political contributions which defendant had invested inmunicipal bonds and which allegedly were earmarked for later political use.
 
 
 5
 The evidence shows that the campaign statements filed by defendant as required by Michigan law failed to disclose any surplus campaign funds and, also, the names of several witnesses who testified they had made political contributions did not appear in this list. The defendant did not take the stand, although he did call an attorney who testified he had advised defendant that surplus political funds could be set aside for future political use and would not be taxable. This same witness advised defendant to invest the funds in municipal bonds. The sufficiency of the government's evidence to support the jury verdict of guilty is not challenged on this appeal.
 
 
 6
 First, defendant contends that the failure to report unspent but accumulated political contributions cannot support a conviction for tax fraud as Revenue Ruling 54-80, which declares that such funds when diverted to personal use are taxable, does not have the force of law. It has been firmly established, however, that this Revenue Ruling is declaratory of judicial interpretation of existing law that funds contributed to a political campaign and diverted to personal use are taxable. United States v. Jett, 352 F.2d 179 (6th Cir. 1965), cert. denied, 383 U.S. 935, 86 S.Ct. 1063, 15 L.Ed.2d 852; O'Dwyer v. Commissioner of Internal Revenue, 266 F.2d 575 (4th Cir.1959), cert. denied, 361 U.S. 862, 80 S.Ct. 119, 4 L.Ed.2d 102; Paschen v. United States, 70 F.2d 491 (7th Cir.1934). Moreover, this issue was not preserved for appellate review and it is only in exceptional cases where injustice might otherwise result that an issue not raised at the trial level will be considered on appeal. Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); Dupes v. Johnson, 353 F.2d 103 (6th Cir.1965); Wiper v. Great Lakes Engineering Works, 340 F.2d 727 (6th Cir.1965), cert. denied, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60; City of Memphis v. Southern Bell Telephone and Telegraph Co., 316 F.2d 535 (6th Cir.1963); Petty v. Porter, 322 F.2d 308 (6th Cir.1963), cert. denied, 377 U.S. 948, 84 S.Ct. 1358, 12 L.Ed.2d 310.
 
 
 7
 Secondly, the defendant makes certain objections to the instructions of the court. Basically, the objections are twofold: (1) The alleged failure to properly distinguish between gifts and political contributions, and (2) that the statement to the effect that any payment made with the intention that it be compensation for past or future favors or preferment was taxable insinuated to the jury that defendant took bribes when there was no such evidence in the case. We have examined the record and find that the jury was adequately instructed. Again, no objections were made to the now challenged instructions as required by Rule 30 of the Federal Rules of Criminal Procedure, and in the absence of plain error the failure to object is fatal. Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1962); United States v. Little, 391 F.2d 222 (6th Cir.1968); United States v. Dorsey, 290 F.2d 893 (6th Cir.1961), cert. denied, 368 U.S. 825, 82 S.Ct. 44, 7 L.Ed.2d 29; Solomon v. United States, 276 F.2d 669 (6th Cir.1960), cert. denied, 364 U.S. 890, 81 S.Ct. 219, 5 L.Ed.2d 186, reh. denied, 364 U.S. 939, 81 S.Ct. 376, 5 L.Ed.2d 371.
 
 
 8
 The third objection of the defendant is to that portion of the government's closing argument which suggests that the defendant was a recipient of bribes. Again, no objection was made by the defense and this issue should not now receive consideration on appeal. If defendant's counsel considered the language harmful, he could have made an States v. Benson, 389 F.2d 376 (6th Cir.1968), cert. denied, 391 U.S. 903, 88 S.Ct. any erroneous impression that the fragment of the argument complained of may have invoked. United States v. Benson, 389 F.2d 376 (6th Cir. 1968), cert. denied, 391 U.S. 903, 88 S.Ct. 1652, 20 L.Ed.2d 418; United States v. Lichota, 351 F.2d 81 (6th Cir.1965), cert. denied, 382 U.S. 1027, 86 S.Ct. 647, 15 L.Ed.2d 540, reh. denied, 383 U.S. 954, 86 S.Ct. 1195, 16 L.Ed.2d 216; United States v. Chamley, 376 F.2d 57 (7th Cir.1967), cert. denied, 389 U.S. 898, 88 S.Ct. 221, 19 L.Ed.2d 220; United States v. Kravitz, 281 F.2d 581 (3rd Cir.1960), cert. denied, 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372. We agree with the statement in the government brief that 'the isolated portions of the summation now complained of, while they might just as well have been omitted, could not possibly have deprived appellant of a fair trial.'
 
 
 9
 The fourth issue raised by the defendant is whether statements made by agents of the Internal Revenue Service during their conferences with him were properly received into evidence. Again, no objections to the admissibility of these statements were made by the defense and they should not now be considered on review. Moreover, the statements made by the defendant to the agents during these conferences were concededly admissible and the questions and statements of the agents were necessary to place defendant's statements in proper perspective. The hearsay rule excludes extrajudicial utterances only when offered to evidence the truth or falsity of the statements not when offered to show that the utterances were made. United States v. Press, 336 F.2d 1003 (2nd Cir.1964), cert. denied, 379 U.S. 965, 85 S.Ct. 658, 13 L.Ed.2d 559, reh. denied, Fry v. United States, 380 U.S. 927, 85 S.Ct. 887, 13 L.Ed.2d 815; Hicks v. United States, 173 F.2d 570 (4th Cir.1949), cert. denied, 337 U.S. 945, 69 S.Ct. 1501, 93 L.Ed. 1748; Wigmore, Evidence 1766 (1940 ed.).
 
 
 10
 Fifthly, the defendant contends that the court erred in failing to suppress the testimony of the defendant's conversation with the government agents during their conferences and the exhibits and leads derived from them. A full evidentiary hearing preceded the denial of the motion to suppress, at which numerous contentions were advanced by the defendant. As found by the Districct Court, all are without merit.
 
 
 11
 The defendant was never in custody when being interrogated by the agents of the Internal Revenue Service. Where a person is not under arrest or under duress in the legal sense of the term, it is not necessary to the admission of his statements in evidence that he be warned of his constitutional rights by the agents interviewing him. United States v. Maius, 378 F.2d 716 (6th Cir.1967), cert. denied, 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219; Morgan v. United States, 377 F.2d 507 (1st Cir.1967); Spinney v. United States, 385 F.2d 908 (1st Cir.1967), cert. denied, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981; United States v. Squeri, 398 F.2d 785 (2nd Cir.1968); United States v. Mancuso, 378 F.2d 612 (4th Cir.1967); cert. denied, 390 U.S. 1051, 19 L.Ed.2d 1149; Muse v. United States,405 F.2d 40 (8th Cir.1968), cert. denied, 393 U.S. 1117, 89 S.Ct. 992, 22 L.Ed.2d 122; Hensley v. United States, 406 F.2d 481 (10th Cir.1968). And this is true even when the examination for the purpose of determining civil tax liability takes on criminal aspects. United States v. Sclafani, 265 F.2d 408 (2nd Cir.1959), cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534; United States v. Frank, 245 F.2d 284 (3rd Cir.1957), cert. denied,355 U.S. 819, 78 S.Ct. 25, 2 L.Ed.2d 35; Biggs v. United States, 246 F.2d 40 (6th Cir.1957), cert. denied, 355 U.S. 922, 78 S.Ct. 364, 2 L.Ed.2d 353. But, Cf. United States v. Dickerson, 413 F.2d 1111 (7th Cir.1969).
 
 
 12
 Defendant also complains that without his knowledge tape recordings were made of his interviews with the Treasury agents. These taped interviews were held in government offices so there was no unlawful invasion of defendant's premises under circumstances that would violate the Fifth Amendment, and there was no electronic eavesdropping on private conversations which government agents could not otherwise have overheard. Therefore, under the circumstances, there was no invasion of constitutionally protected rights or violation of federal law. Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942).
 
 
 13
 Defendant also argued before trial that he was not physically and mentally capable of testifying or assisting in his defense and moved for a continuance. One continuance had already been granted but a full evidentiary hearing on the second motion was conducted and the continuance was then denied. A trial judge is vested with wide discretion in ruling upon motions for continuances and his ruling will not be disturbed except in a case of clear abuse. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); United States v. Decker, 304 F.2d 702 (6th Cir.1962); United States v. Koenig, 300 F.2d 377 (6th Cir.1962); Adams v. United States, 128 F.2d 820 (5th Cir.1942), cert. denied, 317 U.S. 632, 63 S.Ct. 61, 87 L.Ed. 510.
 
 
 14
 The judgment is affirmed.
 
 
 
 [1]
 The Honorable Henry L. Brooks, then Chief Judge of the United States District Court for the Western District of Kentucky, sat on this case by designation