UNITED STATES of America,
Appellee,

v.

Roy Harding GALLINGTON and Wilbur
Eugene Streeter, Appellants.

No. 73–1351.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1973.

Decided Dec. 12, 1973.

Certiorari Denied April 1, 1974.
See 94 S.Ct. 1613.

M. J. Galvin, Jr., and Douglas L. Skor, St. Paul, Minn., for appellants.

Earl Gray, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

This is a direct appeal from the defendants' convictions for kidnapping in violation of 18 U.S.C. § 1201(a) and the denial of their motion for a new trial.

On January 9, 1973, Wilbur Streeter contacted James Goergen, an Austin, Minnesota, antique gun dealer, at his home and represented that he was the agent of a man in Potsdam, Minnesota, who desired to sell his gun collection for $12,000. Streeter met Goergen the next morning and informed Goergen that the sale must be for cash. He introduced Goergen to Roy Gallington, who was represented as being the son-in-law of the seller. Goergen obtained $12,000 in cash from his bank. Thereafter, the defendants and Goergen drove in Goergen's camper truck to a point near Potsdam where the defendants pulled their pistols and robbed Goergen of the $12,000. They then directed him to drive the camper to various points within Minnesota and, ultimately, to LaCrosse, Wisconsin.

While driving in LaCrosse, Goergen observed that a police vehicle was following the camper. He slowed the camper and leaped from it onto the road. Officer Tolvstad, a policeman following the camper, believed it was out of control and moved to stop it with his patrol car. While in this act, he heard a "thud" and saw a shiny object in the hand of one of the camper's occupants. The defendants turned off the road and abandoned the camper at a truck stop. The police followed footprints in the snow to a mobile home park where they learned that a stranger had forced a resident, John Farrell, to drive him in Farrell's automobile. Streeter and Farrell were later apprehended near LaCrosse. A pistol was found in the front seat of Farrell's car. Gallington was arrested elsewhere by another police officer. He was searched and relieved of a pistol and an envelope containing $12,000 in cash. A bullet removed from the rear of Officer Tolvstad's patrol car was identified as having been fired from the pistol taken from Gallington.

During March, 1973, defendants and their counsel reached an agreement with the United States Attorney whereby the defendants would plead guilty and the United States Attorney would recommend a sentence of ten years for each defendant with the understanding that the guilty pleas could be withdrawn if the court rejected the plea bargain. On March 12, 1973, a hearing was held before Chief Judge Devitt. The terms of the plea bargain were stated, and the defendants were advised of their rights in full compliance with the Federal Rules of Criminal Procedure [1] and case law.

Judge Devitt closely questioned the defendants to assure that there was a factual basis for all elements of the offense charged. He carefully elicited from the defendants the admission that they had pulled their guns and robbed Goergen prior to entering Wisconsin to establish the interstate nature of the offense. He then accepted the pleas, conditioned upon a subsequent examination of presentence reports.

---

1. Rules referred to herein are the Federal Rules of Criminal Procedure sales otherwise indicated.

Judge Devitt later examined the reports and rejected the plea bargain on the ground that the ten-year sentences were inadequate. The defendants were allowed to withdraw their guilty pleas and enter pleas of not guilty. A joint jury trial was then held before Judge Devitt. No objection to his presiding was raised. Both defendants were found guilty, and each was sentenced to a twenty-five-year prison term. The defendants filed a joint motion for a new trial, contending for the first time that they were denied due process because Judge Devitt tried the case. The motion was denied, and this appeal resulted.

The defendants contend on appeal that the trial court erred by: (1) presiding over the trial after rejecting their pleas of guilty; (2) improperly admitting evidence concerning the commission of other crimes; and (3) imposing excessive sentences and relying on improper factors in determining these sentences. They seek a new trial or, alternatively, reduction of their sentences.

We are asked to adopt a *per se* rule that a judge who conditionally accepts a guilty plea and later rejects it, is disqualified from subsequently trying the case. No claim that Judge Devitt acted prejudicially is made. Rather, the argument is that a defendant is always denied due process if he is tried before a judge who has questioned him as to the factual basis for his guilty plea, conditionally accepted the plea bargain and then rejected it after having read the presentence investigation report.

The defendants argue that a judge who conditionally accepts a guilty plea must limit his examination of a defendant to a determination as to whether the plea is being made intelligently and voluntarily with a full awareness of the rights waived and the consequences of the plea. They contend that the judge must delay questioning a defendant as to the factual basis for his plea until after the judge has read the presentence investigation report and has agreed to accept the plea bargain. Finally, they contend that a judge who rejects a plea bargain, either after reading the presentence investigation report[2] or after interrogating the defendant as to the factual basis for the plea, must disqualify himself from further consideration of the case.

■ We cannot agree with these contentions. It is proper for a judge to satisfy himself that there is a factual basis for a plea of guilty before accepting a plea. This is the case, even though the judge conditions the acceptance of the plea on his being satisfied that the presentence report supports the bargained-for plea. *Cf.*, American Law Institute, Model Code of Pre-Arraignment Procedure § 350.3(5) (T.D. No. 5, 1972) [hereinafter referred to as ALI Model Code]; American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 3.3(b) (Approved Draft, 1968). After rejecting a plea under these circumstances, a judge may excuse himself from further involvement in the case and should give serious consideration to doing so. *See,* ALI Model Code, *supra* at 112–113; President's Commission on Law Enforcement and Administration of Justice, The Chal-

---

**2.** The defendants do not argue that Judge Devitt violated Rule 32 by trying the case after having examined the presentence investigation reports. *See,* Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L. Ed.2d 442 (1969). He had accepted the guilty pleas, *albeit*, conditionally and it was permissible under Rule 32(c)(1) for him to have examined the presentence reports before the trial. *Cf.*, Webster v. United States, 330 F.Supp. 1080 (E.D.Va.1971). A proposed amendment to Rule 32 spe-

cifically provides that a judge may examine the presentence report prior to accepting a plea, and the Advisory Committee Note to that amendment states that it is within the discretion of the trial judge to determine whether to recuse himself from presiding over the trial of a case where he has examined the presentence report and then rejected a plea bargain. Proposed Amendments to the Federal Rules of Criminal Procedure (Approved by the Judicial Conference, October 27, 1972).

lenge of Crime in a Free Society 136 (1967); President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 13 (1967). *See also*, Brown v. Peyton, 435 F.2d 1352, 1359 (4th Cir. 1970) (Winter, J., dissenting). But ultimately, absent a showing of actual prejudice, the choice lies within the discretion of the trial judge, and we find no abuse of discretion here.

Plea bargaining is susceptible to abuse. Its proper use, however, has been tacitly approved by the Supreme Court,[3] this Court[4] and many study commissions[5] that have reviewed the problem. While a recent report[6] has recommended that plea bargaining be abolished by 1978, we are not prepared to adopt that recommendation.

■■ We caution, however, that if plea bargaining is to be practiced, the requirements of Rule 11, as explicated by the Supreme Court in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), must be

followed. Furthermore, the following safeguards must also be implemented: (1) Prosecutors must avoid mischarging, overcharging and threats of heavier sentences for those who do not plead guilty.[7] (2) Judges are to require the agreement to be disclosed in open court at the time the plea is offered[8] and require that the reasons for reaching the agreement be set forth in detail.[9] (3) Judges are not to participate in the bargaining; their role is to be limited to acceptance or rejection of agreements after a thorough review of all relevant factors.[10] They must independently satisfy themselves that acceptance of the agreement adequately protects the rights of the defendant and the interests of justice, and they must set forth their reasons for accepting or rejecting the plea. (4) Defendants must be given an opportunity to withdraw the plea if the bargain is rejected by the judge.[11] In such event, evidence of the plea is not admissible in any civil or criminal proceeding against the person who made the plea or the offer.[12]

3. *See, e. g.*, Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

4. *See*, Meyer v. United States, 424 F.2d 1181, 1188, 1198–1199 (8th Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 92, 27 L.Ed.2d 91 (1970); Ford v. United States, 418 F.2d 855, 858 (8th Cir. 1969).

5. American Law Institute, Model Code of Pre-Arraignment Procedures, Art. 350 (T.D. No. 5, 1972) [hereinafter referred to as ALI Model Code]; American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, Part III (Approved Draft, 1968) [hereinafter referred to as ABA Standards]; President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 134–136 (1967); President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 9–13 (1967). *See also*, Proposed Rule 11(e), Proposed Amendments to Federal Rules of Criminal Procedure (Approved by the Judicial Conference, October 27, 1972).

6. National Advisory Commission on Criminal Justice Standards and Goals, Courts, Standard 3.1 (1973) [hereinafter referred to as National Advisory Commission Report].

7. National Advisory Commission Report, *supra* at Standard 3.6; ALI Model Code, *supra* at § 350.3(3).

8. National Advisory Commission Report, *supra* at Standard 3.2 and 3.7; ALI Model Code, *supra* at § 350.5(1). Proposed Rule 11(e)(2), *supra*.

9. ALI Model Code, *supra* at § 350.3(5).

10. National Advisory Commission Report, *supra* at Standard 3.7; ALI Model Code, *supra* at §§ 350.3(1) and 350.5(2); ABA Standards, *supra* at § 3.3(a); Proposed Rule 11(e)(1), *supra*. *Contra*, Note, Restructuring the Plea Bargain, 82 Yale L.Rev. 286 (1972).

11. ALI Model Code, *supra* at §§ 350.5(4) and 350.6; ABA Standards, *supra* at § 3.-3(b); Proposed Rule 11(e)(4), *supra*.

12. ALI Model Code, *supra* at § 350.7; ABA Standards, *supra* at § 3.4; Proposed Rule 11(e)(6), *supra*.

■ We find no merit to defendants' contention that the trial court erred in admitting testimony as to the offenses which took place after the kidnapping victim, Goergen, escaped from his captors. Specifically, they charge that it was error to admit testimony that a shot was fired at Officer Tolvstad's patrol car and that it was fired from the pistol found on Gallington's person at the time of his arrest. Similarly, they object to the admission of the testimony of Farrell that he was kidnapped by Streeter after the latter left the camper and sought to make his escape. The testimony, in our view, was admissible because the acts testified to were integral parts of the offense for which the defendants were charged. *See,* United States v. Cochran, 475 F.2d 1080, 1082–1083 (8th Cir. 1973). The testimony also served to show the identity of the defendants. *See,* Drews v. State of Minnesota, 407 F.2d 1307, 1308–1309 (8th Cir. 1969); Abernathy v. United States, 402 F.2d 582, 584 (8th Cir. 1968).

■ Finally, the defendants ask for a reduction of their sentences, either by this Court or on remand. The sentences imposed are well under the maximum permitted for violations of 18 U.S.C. § 1201, and it appears from the record that this request has not been previously made in the trial court. Accordingly, the contention will not be considered by this Court. *See,* Glouser v. Van Alstine, 313 F.2d 199, 200 (8th Cir.), cert. denied, 374 U.S. 857, 83 S.Ct. 1902, 10 L. Ed.2d 1077 (1963); 2 C. Wright, Federal Practice and Procedure § 588 at 575–576 (1969).

The Court wishes to express appreciation to the defendants' appointed counsel for their excellent briefs and argument.

Affirmed.